UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD BILLINGSLEY,<br><br>   Plaintiff,<br><br><br>MV TRANSPORTATION, INC.,<br>a California Corporation,<br><br>   Defendant. | 1:17-cv-00008-LJO-EPG<br><br>ORDER AND MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE AND WITH LEAVE TO AMEND<br><br>(Doc. 6) |

## I. INTRODUCTION

Pending before the Court is Defendant MV Transportation, Inc.'s ("MVT") motion to dismiss Plaintiff Ronald Billingsley's ("Plaintiff") complaint without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6.) Plaintiff filed an opposition on February 28, 2017, and MVT filed a reply on March 7, 2017. The matter was taken under submission pursuant to Local Rule 230(g), and the hearing originally set for March 7, 2017, was vacated.[1] For the reasons set forth below, MVT's motion to dismiss is GRANTED in part; Plaintiff may file an amended complaint within 14 days if he is able to cure the deficiencies discussed below.

---

[1] Plaintiff was permitted to file an out-of-time opposition brief, MVT's reply deadline was extended to March 7, 2017, and the hearing was vacated to allow this additional time for briefing. (Doc. 12.)

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff alleges that between April 2006 and May 12, 2015, he was employed by MVT as a bus driver. (Cmplt., Doc. 1-1, ¶ 7.) The employer-employee relationship between Plaintiff and MVT was governed by a collective bargaining agreement ("CBA") between MVT and Teamster Local 517 (the "Union"). (Cmplt., Doc. 1-1, ¶¶ 9-11.)[2] During his employment, Plaintiff received good performance evaluations and pay raises; he also received a bonus for perfect attendance. Plaintiff claims he was assured on numerous occasions that he would not be terminated arbitrarily by supervisors and co-workers, and he relied on the provisions of the agreement between MVT and the Union regarding the causes for which employees could be terminated. Pursuant to the CBA, MVT would employ Plaintiff so long as Plaintiff's performance was satisfactory, and MVT would not discharge employees without good and just cause. (Cmplt., Doc. 1-1, ¶¶ 12-17.)

On May 12, 2015, MVT terminated Plaintiff's employment as a result of an incident that occurred on May 5, 2015, which involved an encounter Plaintiff had with a bus passenger. (Cmplt., Doc. 1-1, ¶¶ 18-19.) On August 21, 2015, another passenger who witnessed the incident gave a written statement that the passenger involved in the incident was being unreasonable. (Cmplt., Doc. 1-1, ¶ 22.) MVT has refused to reinstate Plaintiff, however. (Cmplt., Doc. 1-1, ¶ 49.) Plaintiff claims there was no just cause for his termination because MVT failed to conduct an adequate investigation and was without sufficient evidence to satisfy the requisite "just cause" standard under the CBA. (Cmplt., Doc. 1-1, ¶ 33.)

On October 28, 2016, Plaintiff filed suit in Fresno County Superior Court asserting claims of wrongful termination in breach of contract, breach of the covenant of good faith and fair dealing, and

---

[2] The CBA effective from December 1, 2009, to November 30, 2014, is attached to Plaintiff's complaint (Doc. 1-1, pp. 12-46) and referenced therein; MVT requests the Court take judicial notice of the CBA dated and effective from December 1, 2014, to November 30, 2017 (Doc. 8). Neither party disputes the contents of the CBA nor that it applied to Plaintiff at the time of his termination, thus judicial notice of the December 1, 2014, through November 30, 2017, CBA is GRANTED. *United States. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

2

sought both declaratory relief and specific performance.  (Cmplt., Doc. 1-1.)  MVT was served with the complaint on December 5, 2016, and removed the case to this Court on January 3, 2017.  (Doc. 1.) MVT predicated removal jurisdiction on complete preemption under 29 U.S.C. § 185(a), section 301 of the Labor-Management Relations Act ("LMRA"), which governs all suits for breach of a collective bargaining agreement.  (Doc. 1-1, p. 6.)[3]

### III. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint.  Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not

---

[3] Although Plaintiff claims section 301 does not preempt his claims, he did not file a motion to remand based on subject matter jurisdiction or otherwise address jurisdiction.

3

entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint...must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. ANALYSIS

**A.    Plaintiff's Claims are Preempted by Section 301 of the LMRA**

Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). To ensure uniform federal interpretation of a collective bargaining agreement, section 301 preempts state law claims that are based directly on rights created by a collective bargaining agreement as well as claims that are substantially dependent on an interpretation of a collective bargaining agreement. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987). MVT contends Plaintiff's state law claims are preempted by section 301 because they stem from rights created by the CBA.

**1.    Plaintiff's Claim for Wrongful Termination in Breach of Contract**

MVT argues Plaintiff's claim for wrongful termination in breach of contract is preempted because it is based directly on rights created by the CBA – i.e., the right of employees not to be discharged without just cause. MVT maintains that determining whether Plaintiff's termination was wrongful will necessarily require an interpretation of the CBA's just cause and discipline terms, and, as such, the claim is preempted by section 301.

Although Plaintiff does not dispute that his right to just-cause only termination was created by the CBA, Plaintiff argues once this right attached, California law imposes on employers duties to

4

adequately investigate and obtain substantial evidence to support the termination. Plaintiff contends these are rights separate and apart from the just-cause right in the CBA, and can be adjudicated without actually interpreting the terms of the CBA. Based on this theory, Plaintiff asserts his contract claim under state law is not preempted by section 301.

MVT responds that by asserting the wrongful termination contract claim does not involve a breach of the "just cause" provision of the CBA, but rather state law requirements for an adequate investigation and substantial evidence prior to termination, Plaintiff is essentially conceding his contract claim. Specifically, if MVT did not breach any term of the CBA, then there cannot be a "breach of contract" claim; it is illogical to assert a breach of the CBA, and then posit the obligation breached by MVT is separate from the CBA. MVT further argues the authority Plaintiff cites for the right to an adequate investigation and substantial evidence is based on *Silva v. Lucky Stores, Inc.*, 65 Cal. App. 4th 256 (1998), a case involving common-law termination under California law that is inapposite to this case which involves a CBA. MVT maintains the requirement for an adequate investigation and sufficient evidence are inherently and inextricably wrapped up in the "just cause" determination under the CBA.

There is no dispute that Plaintiff's employment was subject to a CBA that required "just cause" for termination of his employment. Article IX of the CBA provides a section on "Discipline and Discharge," which directs that employees may only be disciplined and discharged for "just cause," and outlines the relevant grievance procedures related to such discipline and discharge. (Doc. 8-1, p. 12-14.)[4]

Section 4 of Article IX provides an illustrative list of "Major Violations" that "could warrant immediate discharge," such as "[i]nappropriate, unprofessional or disorderly verbal or physical conduct directed towards coworkers, passengers, client or any third party while acting as a representative of the

---

[4] All page numbers correspond to the CM/ECF pagination at the top of the filed document.

company."  (Doc. 8-1, p. 14, no. 10.)  The CBA's Article X outlines the grievance procedures pertaining to discipline and terminations, which culminate in mandatory and binding arbitration.  (Doc. 8-1, pp. 15-17.)

Plaintiff's complaint is premised on an alleged breach of the CBA: Plaintiff alleges MVT lacked "just cause" for terminating Plaintiff's employment.  Plaintiff cites *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal. 4th 93, 108 (1998) and *Silva*, 65 Cal. App. 4th at 256 for the proposition that a right to an adequate investigation and to substantial evidence supporting termination are separate rights from the "just cause" termination right under the CBA.  However, Plaintiff's attempt to re-characterize the nature of his state law claims is unpersuasive.

In *Cotran*, the California Supreme Court considered the role of the jury in determining whether employment terminations in the implied-employment-contract context are supported by just cause.  17 Cal. 4th at 108.  The court concluded the jury's "just cause" determination was not a subjective consideration regarding whether an employer proved the employee in fact committed the act leading to termination; rather, "just cause" was to be measured by whether the employer had an objectively reasonable basis to justify a termination.  After clarifying the parameters of the jury's fact-finding inquiry, the court continued its analysis by articulating the governing standard for "good cause" as "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial arbitrary or capricious, unrelated to the business needs or goals or pretext . . . [a] reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond."  *Id.*  The appellate court in *Silva* simply applied the standards announced in *Cotran*.  *Silva*, 65 Cal. App. 4th at 264-77 (considering three factors of good cause announced in *Cotran*: employers good faith, whether investigation of circumstances warranting termination was adequate, and whether employer had reasonable grounds for believing the employee had engaged in misconduct).

6

While *Cotran* is inapplicable in the context of the CBA, that court's articulation of the good cause standard undercuts Plaintiff's argument as it exemplifies how sufficient evidence and investigation are factors evidencing good cause, not rights separate from a just-cause employment termination right. The good cause standard articulated by *Cotran* tethers and predicates "good cause" upon factors establishing objective reasonableness on the part of the employer, such as the adequacy of the investigation and the sufficiency of evidence supporting the decision. These factors are not themselves separate rights apart from good cause, but are objective measures evidencing good cause in the context of implied employment agreements.

Similar to *Cotran*, considering whether there was an adequate investigation and sufficient evidence is bound up with whether MVT had "just cause" to discharge Plaintiff under the CBA. Plaintiff's complaint itself contends that the controversy between the parties arose "in relation to the interpretation of the employment agreement," and he seeks a "determination of the rights and duties" of the parties "under the employment agreement." (Cmplt., Doc. 1-1, ¶¶ 42-43.) Plaintiff's claim also potentially implicates whether the evidence established the incident was a "Major Violation" under the CBA (possibly subjecting an employee to immediate termination), or was instead more minor conduct that should have been subject to progressive discipline as described by the CBA. Plaintiff's contract claim is predicated on the "just cause" right arising directly from the CBA, and it requires interpretation of the CBA's terms, not mere tangential reference to them. Plaintiff also argues his right to just-cause termination was a product of an implied-in-fact or oral promise separate from the CBA – thus, his claim is not predicated on rights arising out of the CBA and is not subject to preemption. The Ninth Circuit has rejected similar attempts to distinguish state law breach of contract claims as only tangential to the terms of the CBA. For example, *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283 (9th Cir. 1995), involved a unionized plaintiff (Chmiel) whose employment was governed by a collective bargaining agreement specifying that employees could only be terminated upon "just cause." In 1985, the hotel was sold to Regent International Hotels, Ltd. ("RIH") which negotiated a "sideletter agreement" with

the union wherein RIH agreed to assume the collective bargaining agreement but provided that as of December 31, 1985, all employees would be considered probationary until April 30, 1986. During that time frame, RIH was to have "the absolute right in its sole discretion" to lay off or discharge any probationary employees and those employees would have no rights under the grievance procedures set forth in the CBA. *Id.* at 1284. Chmiel was discharged on April 22, 1986, and subsequently filed suit against RIH alleging, among other causes of action, breach of an express or implied in-fact agreement, separate from the CBA, that he would not be discharged except upon a showing of good cause. *Id.* After removal of the suit to federal court, the district court dismissed each cause of action as preempted by section 301. *Id.*

On appeal, the Ninth Circuit upheld the dismissal of the contract cause of action reasoning that any allegation of an express or implied agreement independent of the collective bargaining agreement's provision of good cause for termination was inconsistent with the express terms of the CBA as modified by the sideletter agreement. Chmiel's job position was governed by the collective bargaining agreement, and therefore his contract claim was completely preempted by section 301.

Like *Chmiel*, there is no dispute that Plaintiff's job position here is governed by the terms of the CBA. The CBA here provides that it constitutes the "sole and entire existing Agreement between the parties and supersedes all prior agreements, commitments and practices, whether oral or written . . . between the Company and any of its employees covered by this Agreement, and expresses all obligations of and restrictions imposed on the Company." (Doc. 8-1, p. 23.) Despite Plaintiff's allegations to the contrary, there can be no separate implied agreement related to Plaintiff's employment.

In sum, Plaintiff's claim for wrongful termination in breach of contract arises out of the "just cause" employment right created by the CBA and will necessarily require interpretation of the CBA's terms in relation to discipline procedures. No other implied agreement, separate from the CBA, can be the basis of Plaintiff's contract claim because by the terms of the CBA itself, the CBA is the only

8

agreement governing Plaintiff's employment relationship with MVT. The contract claim is preempted by section 301. *Caterpillar*, 482 U.S. at 394 (section 301 preempts claims founded directly on rights created by a CBA and also claims substantially dependent upon analysis of a CBA).

### 2. Plaintiff's Claim for Breach of the Implied Covenant

Plaintiff asserts his claim for breach of the implied covenant concerns a breach of duties and rights that exist independent of any rights established by the CBA. This includes the express and implied promises made in connection with the employment relationship, and the acts, conduct, and communications that created a duty for MVT to act with good faith and deal fairly with Plaintiff. According to Plaintiff, these duties were not created by the CBA but arose from Plaintiff's decade-long employment with MVT. MVT contends Plaintiff's employment relationship and his termination are governed by the terms of the CBA, and his claim for breach of the implied covenant springs directly from those terms of the CBA. Further, MVT maintains the Ninth Circuit has clearly rejected similar arguments and has held implied covenant claims to be preempted. (Doc. 13, 5:20-6:8.)

"Under California law, a claim for breach of the implied covenant is necessarily based on the existence of an underlying contractual relationship, and the essence of the covenant is that neither party to the contract will do anything which would deprive the other of the benefits of the contract." *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (1991). The implied covenant claim is designed to protect the job security of employees who at common law could be fired at will. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987). Unionized employees experience no comparable lack of job security, thus section 301 preempts the implied covenant when an employee has comparable job security under a collective bargaining agreement. *Id.*

In *Milne*, former employees brought suit against their employer alleging the employer falsely told them their jobs were secure and urged them not to seek other employment upon rumors the company would be closing. 960 F.2d at 1405. Approximately nine months later, the company closed all its locations and terminated its employees. The former employees alleged state law claims,

including one for breach of the implied covenant asserting their employee-employer relationship implied a duty their employer would do nothing to hinder employees' abilities to enjoy their employment and accompanying financial benefits. *Id.* The employees claimed this provision was breached by the false representations and closure of the company. The court held the claim was preempted because the underlying employment contracts were collective bargaining agreements, which would have to be interpreted to determine the scope of the employees' rights. *Id.* at 1411.

Similar to *Milne*, Plaintiff's implied covenant claim does not pertain to rights that are independent of the terms of the CBA. Although Plaintiff asserts his implied covenant claim is based on duties arising from the facts of his employment relationship and the conduct and representations of his supervisors, his termination is nonetheless governed by the terms of the CBA as his claim encompasses the same rights and protections afforded by the CBA; the implied covenant claim is inextricably intertwined with consideration of the terms of the CBA. *Young*, 830 F.2d at 999. This claim is preempted by section 301.

### 3. Plaintiff's Claims for Declaratory Relief and Specific Performance

Plaintiff's third and fourth causes of action are for declaratory relief and specific performance, respectively. As MVT notes, however, these are not independent causes of action, but are forms of relief. Specific performance is a remedy for a breach of contract where there is no adequate remedy at law. *Wilkison v. Wiederkehr*, 101 Cal. App. 4th 822, 833 (2002). Declaratory relief is also a remedy available for breach of contract, but it is not a stand-alone claim. These requests for relief are dependent upon Plaintiff's contract claims, which are preempted. Thus, as stand-alone claims, these causes of action are dismissed.

### B. Plaintiff's Claims Appear Time-Barred Under Section 301

When state law claims are preempted by section 301, the claims are re-characterized as arising under section 301. *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F. 1107, 1111 (9th Cir. 1999) (quoting *Williams*, 482 U.S. at 392 ("Once an area of state law has been completely pre-

empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.")). Recasting Plaintiff's state-law breach of contract and breach of the implied covenant claims under section 301, MVT argues Plaintiff may only avoid the binding arbitration provisions of the CBA if he asserts the Union breached its duty to fairly represent him, which he has not done. More importantly, even if Plaintiff had alleged (or could allege) such facts, MVT maintains section 301 claims are subject to a 6-month statute of limitations that begins to accrue at the time the employee knew or should have known of the Union's breach of its duty. Because Plaintiff's employment was terminated in May 2015 and this suit was not filed until October 2016, MVT asserts even if Plaintiff could adequately allege a section 301 claim, it is ultimately barred by the 6-month statute of limitations.

An employee is ordinarily required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965). These administrative proceedings are subject to little judicial review and an employee is often bound by the results according to the finality provisions in the agreement. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983). Notwithstanding the finality of the outcome or finality of the grievance or arbitration proceeding, an employee is not precluded from filing suit where the union representing the employee in such a grievance/arbitration proceeding has acted in a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. *Id.* Such a lawsuit constitutes two causes of action: the suit against the employer under § 301 and the suit against the union for duty of fair representation. *Id.* The employee does not need to name both the employer and the union as defendants, but he must prove the same whether he sues one, the other or both: that the CBA was breached by the employer, and the union failed in its duty of fair representation. *Id.* The resulting claim, therefore, is referred to as a hybrid/fair representation claim. *Id.* In *DelCostello*, the Supreme Court applied the 6-month statute of limitations under section 10(b) of the National Labor Relations Act to these hybrid section 301/fair representation claims. *Id.* at 169-71.

In discharge situations, the CBA here provides that "the Company should not proceed with any investigation unless the employee being investigated is provided with union representation from his/her local union unless specifically waived by the employee." (Doc. 8-1, pp. 12-13.) If the employee disagrees with a discharge or discipline decision, there are grievance procedures provided by the CBA. The Union must first present the written grievance to the Project Manager or his/her designee within 15 calendar days following the occurrence out of which the grievance arose or the date the employee and or the union became aware of the grievance. Failure to present the grievance within 15 days will be deemed a waiver of the agreement. *Id.* If the grievance is not resolved at this first step, the Union must "refer the grievance in writing to the division manager who will refer to the regional manager or his/her designee within ten (10) calendar days . . . [f]ailure of the Union to request Step 2 within 10 days of the Company's written decision shall constitute a waiver of the grievance." *Id.* Following submission of the grievance, a meeting with the Regional Manager will be held with a written answer to the grievance issued. *Id.* Either party may request the grievance be submitted for further mediation or arbitration, the terms of which are outlined by the CBA. Any decision by an arbitrator is "final *and* binding on the Company, on all Bargaining Unit Employees and on the Union." (Doc. 8-1, p. 17, Article X, Section 7.)

Plaintiff does not allege whether he exhausted the grievance procedures detailed in the CBA or make any factual allegations regarding the investigation of the circumstances surrounding his termination; Plaintiff does not address the Union's representation of him during any investigation or whether the Union advised him about filing a grievance after MVT discharged him. The complaint is entirely bereft about what occurred after Plaintiff was dismissed, and this issue was not addressed in the opposition to MVT's motion to dismiss. With no details about the investigation of the incident resulting in Plaintiff's dismissal, whether Plaintiff exhausted his administrative remedies, or the Union's participation in the investigation or subsequent grievance processes, it appears the 6-month statute of limitations would have begun to run in May 2015 or soon thereafter. Due to the complete absence of

facts, it is not clear a section 301 claim is time-barred, although it reasonably appears so. Based on this ambiguity in the pleading, Plaintiff may file an amended complaint setting forth a hybrid section 301/fair representation claim, to the extent facts exist showing that it is not time-barred.

### V. CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. MVT's Motion to Dismiss is GRANTED in part;
2. Plaintiff's complaint is dismissed with leave to amend;
3. If, and only if, Plaintiff is able to cure the factual deficiencies with respect to the statute of limitations issue, Plaintiff may file an amended complaint alleging a hybrid/fair representation section 301 claim within 14 days; and
4. If Plaintiff does not file an amended complaint, this case will be dismissed with prejudice as time-barred.

IT IS SO ORDERED.

Dated:   **March 17, 2017**            /s/ Lawrence J. O'Neill
                                    UNITED STATES CHIEF DISTRICT JUDGE